FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 SEP 29 PM 3: 17

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| BRANDY JEAN DOUGLAS, | X | |
| Petitioner, | X | |
| vs. | X | No. 04-2606-Ma/V |
| REUBEN HODGE, | X | |
| Respondent. | X | |

ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Petitioner Brandy Jean Douglas, Tennessee Department of Correction ("TDOC") prisoner number 322654, who was, at the time she commenced this action, an inmate at the Mark H. Luttrell Correctional Center in Memphis, filed a pro se petition pursuant to 28 U.S.C. § 2254 on August 3, 2004. Petitioner filed a motion seeking leave to proceed in forma pauperis on September 24, 2004. The Court issued an order on November 9, 2004 that, inter alia, granted leave to proceed in forma pauperis and directed the warden to respond to the petition. On December 17, 2004, the respondent filed a motion to dismiss, accompanied by a supporting memorandum. The Court issued an order on January 13, 2005 directing the

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  9-30-05

16

respondent to file the state-court record. Respondent filed documents in response to that order on February 7, 2005.

I.  STATE COURT PROCEDURAL HISTORY

On November 21, 1999, police officers found William Godson, Douglas's four-month-old child, locked in the back seat of her car, which was parked at the Jackson Recreation Center. Douglas encountered the officers when she left the Center, and she was reported to be "heavily intoxicated and belligerent." Witnesses reported that the child had been left in the vehicle for at least an hour. Douglas was subsequently indicted on one charge of felony child neglect involving a child under six years of age, in violation of Tenn. Code Ann. § 39-15-401, and one charge of public intoxication, in violation of Tenn. Code Ann. § 39-17-310.

On August 4, 2000, Douglas entered a "best interest" plea in the Madison County Circuit Court to the child neglect charge, a Class D felony, and was sentenced to four years' imprisonment as a Range I offender. Douglas's sentence was suspended and she was placed on four years' probation. Judgment was entered on August 7, 2000.[1] Douglas did not file a direct appeal, and she did not file a petition for postconviction relief.

On April 7, 2001, an arrest warrant was issued for Douglas on the grounds that she had violated the terms of her probation by (i) being arrested for driving under the influence

---

[1] For reasons that are not explained, the petition asserts that Douglas was convicted on July 18, 2002.

2

("DUI"); (ii) failing to report the arrest to her probation officer; (iii) failing to show proof of employment; (iv) failing to show proof of parenting classes; (v) an arrest for intoxicants; and (vi) no proof of court payments in the total amount of $293. The case was heard in the Madison County Circuit Court on May 18, 2001 and, on May 21, 2001, the court issued an order revoking Douglas's probation and directing her to serve thirty (30) days in the Madison County Jail and/or Workhouse, with the balance of her sentence suspended. On August 16, 2001, Douglas was placed on probation for new period of four years.

Douglas's probation officer issued a Probation Violation Report on October 24, 2001, stating that Douglas had violated the terms of her probation by (i) failing to inform her probation officer of changes in her address and employment; (ii) failing to report to her probation officer on September 13, 2001; September 20, 2001; September 27, 2001; and October 9, 2001; (iii) failing to submit to DNA testing; and (iv) failing to attend alcohol/drug counseling. An arrest warrant was issued on October 26, 2001. The case was heard in the Madison County Circuit Court on June 24, 2002 and, on July 18, 2002, the court issued an order revoking Douglas's probation and directing that she serve her sentence as previously imposed.[2]

---

[2] The documents submitted by respondent indicate that Douglas was entitled to jail credit to be calculated by the Madison County Sheriff's Department. Although respondent submitted documents concerning a dispute over
(continued...)

3

Douglas had a parole hearing on February 20, 2003. Neither the petition nor the response states the result of that hearing, although it can be inferred that parole was denied. The record before the Court does not establish the date of Douglas's next parole hearing.

On February 26, 2003, Douglas was screened for a technical parole violator program and was denied entry into that program. The documents attached to the petition indicate that inmates who have gone before the parole board are ineligible for the technical violator program.

Almost a year later, on February 3, 2004, Douglas filed an inmate grievance seeking inclusion in the technical violator program. Douglas contended that officials at the MLCC and her previous prison were negligent by failing to classify her to that program and to screen her for that program upon her entry into the TDOC system.[3] The grievance also contended that the petitioner had

---

[2] (...continued)
Douglas's jail credit, no such issue is raised in the petition.

[3] The grievance cites TDOC Policy No. 404.07, which states in pertinent part as follows:

    J.    Technical Violators Unit—Probation Criteria

        1.    In accordance with TCA 40-20-301, technical probation violators may be considered for placement in a unit designated by the TDOC. The law stipulates that:

            a.    In the event an offender receives a suspension of sentence (i.e., probation) and that sentence is revoked for reasons other than the commission of a new felony offense and the offender is committed to the TDOC, the Department shall have the authority to place the offender in a special
(continued...)

4

been discriminated against. The supervisor's response, dated February 5, 2004, stated that "Inmate Brandy Douglas #322654 meet the Parole Board at TPW [the Tennessee Prison for Women] on 2-20-03 & was shipped to MLCC & was screened by counselor Art Spiegel on 2-26-03. By meeting the Parole Board disqualified Inmate Douglas." A grievance hearing was conducted on February 18, 2004, at the conclusion of which the committee recommended that all inmates be screened for the program upon arrival at the MLCC. The warden agreed with the proposed response on February 20, 2004. There was

---

³ (...continued)
> technical violator unit in lieu of confinement in a regular state penal facility, unless the court specifies in the order of revocation. If the court specifically prohibits the placement of the offender in a special technical violator unit, the court shall make findings of fact and state the reasons for its decision on the order of revocation. In such unit, the offender shall, at a minimum, be required to participate for a period of one hundred twenty (120) days in an intensive regimen of work and available treatment programs in accordance with policies and procedures established by the TDOC.
>
> b.  No offender shall be placed in a special technical violator unit unless and until the offender has been classified by the TDOC as a suitable candidate for such a program in accordance with Departmental policies and guidelines.
>
> 2.  Upon successful completion of a technical violator program, an offender shall be released under probation status to the supervision of the BOPP under the terms and conditions imposed by the trial court. Should an offender fail to comply wit the terms and conditions of supervision imposed by the BOPP, the release on probation supervision may be revoked by the trial judge pursuant to TCA 40-35-311.

TDOC, Administrative Policies and Procedures, Index No. 404.07 (June 1, 2005) (replacing May 1, 2002 version). The program criteria listed in this document do not exclude inmates who have had parole hearings. There may, of course, be some other document, which neither party has cited or furnished to the Court, containing such a policy.

5

no appeal to the TDOC, and it is not clear from the documents whether Dodd was afforded the opportunity to appeal.

Douglas filed a second grievance on or about April 5, 2004 in which she requested that the MLCC counselor correct the screening form for the technical violator program to remove the statement that she violated probation with a new charge.[4] Because petitioner had already filed a grievance about her eligibility for the technical violator program, on April 22, 2004 the grievance committee deemed the new grievance to be nongrievable and an abuse of the grievance process. The warden concurred on April 23, 2004. Douglas appealed to TDOC, which denied the appeal on May 19, 2004.

## II. PETITIONER'S FEDERAL HABEAS CLAIMS

In this petition, Douglas asserts that her sentence is unconstitutional and she should have been released after one hundred twenty (120) days in TDOC custody, presumably because she should have been permitted to participate in the technical violator program.

## III. ANALYSIS OF THE MERITS

Respondent first contends that the petition is time barred. Twenty-eight U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall begin to run from the latest of—

---

[4] Inmates with new felony convictions are not eligible for the technical violator program. Index No. 404.07, ¶ VI.J.1.a & 4.c.

6

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The analysis of this issue is complicated by the fact that Douglas is not challenging her original conviction and sentence. Douglas is also not challenging the validity of the July 18, 2002 order that revoked her probation and ordered her to serve the sentence previously imposed. Finally, Douglas is not challenging the denial of parole in 2003. Accordingly, respondent's argument that the petition is time barred because it was not filed within one year of the time her conviction became final, or one year of the revocation of her probation, is without merit. That does not mean, however, that Douglas's petition is timely.

7

In this case, Douglas's claim falls within subsection (D). She is challenging her exclusion from the technical violator program and, therefore, the limitations period began to run on February 26, 2003, the date on which she was excluded from the program. Even if it were assumed that the running of the limitations period was tolled during the entire period Douglas's two grievances were under consideration,[5] the limitations period expired no later than June 14, 2004. As this petition was not signed until July 30, 2004, it is plainly time barred.

The one-year limitations period applicable to § 2254 motions is subject to equitable tolling. <u>Griffin v. Rogers</u>, 308 F.3d 647, 652-53 (6th Cir. 2002); see also <u>Dunlap v. United States</u>, 250 F.3d 1001, 1004 (6th Cir. 2001) (equitable tolling also applies to § 2255 motions). Five factors are relevant to determining the appropriateness of equitably tolling a statute of limitations:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

---

[5] By the time Douglas filed her first grievance on February 3, 2004, 342 days of the one-year limitations period had expired, leaving only twenty-six (26) days in which to file a timely petition. The running of the limitations period recommenced on February 20, 2004, when the warden agreed with the decision of the grievance committee, and expired twenty-six days later, on March 17, 2004. Even if, for some reason, the running of the limitations period did not recommence on that date, it began running no later than May 19, 2004, the date on which the TDOC appeal of the second grievance was denied, and the limitations period expired no later than June 14, 2004.

Dunlap, 250 F.3d at 1008.[6]

The Sixth Circuit has stated that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500; see also Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

> Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. . . . Absent compelling equitable considerations, a court should not extend limitations by even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793, 795 (6th Cir. Mar. 27, 2003); Johnson v. U.S. Postal Serv., No. 86-2189, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when pro se litigant missed filing deadline by one day). Thus, ignorance of the law by pro se litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx. 110, 112 (6th Cir. Oct. 23, 2003); Harrison v. I.M.S., 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); Miller v. Cason, 49 Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); Brown v. United States, 20 Fed. Appx. 373, 374 (6th Cir. Sept. 21, 2001) ("Ignorance of the limitations

---

[6] This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases. Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

9

period does not toll the limitations period."); cf. Jurado, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[7]

Douglas cannot satisfy her burden of demonstrating that equitable tolling would be appropriate in this case. The petition presents no explanation for Douglas's failure to file a timely habeas petition. In particular, it is unclear why Douglas waited almost a year between the date on which her application to the technical violator program was denied and the filing of her first grievance.

The Court DISMISSES the petition, in its entirety, as time barred. Under these circumstances, it is unnecessary to consider the other issues in respondent's motion to dismiss.[8]

## IV. APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

---

[7] See also Cobas v. Burgess, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . ., and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

[8] It is also likely that Douglas's release from prison has rendered the petition moot. When a habeas petition challenges a conviction, a habeas petition is not moot and the court is not divested of jurisdiction where the petitioner is unconditionally released from custody while the petition is pending before the district court or on appeal. Carafas v. LaVallee, 391 U.S. 234 (1968). However, this petition does not challenge the validity of Douglas's conviction and sentence but, instead, challenges her exclusion from a prison program. It is indisputable that Douglas is no longer in a prison. Accordingly, although the "in custody" requirement, 28 U.S.C. § 2254(a), has been satisfied, the petition is at least potentially moot.

10

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893). Thus,

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also id.</u> at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[9]

In this case, there can be no question that the petition is time barred and, therefore, any appeal by this petitioner does

---

[9] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." <u>Id.</u> at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." <u>Id.</u>

12

not deserve attention. The Court, therefore, DENIES a certificate of appealability.

The United States Court of Appeals for the Sixth Circuit has held that the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), does not apply to appeals of orders denying § 2254 petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal in forma pauperis in a § 2254 case, and thereby avoid the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917,[10] the petitioner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. Kincade, 117 F.3d at 952. If the motion is denied, the petitioner may renew the motion in the appellate court.

Rule 24(a) of the Federal Rules of Appellate Procedure states, in pertinent part, that:

> A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to

---

[10] Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

13

pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by this petitioner is not taken in good faith, and she may not proceed on appeal *in forma pauperis*.

IT IS SO ORDERED this 29th day of September, 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

14

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 16 in case 2:04-CV-02606 was distributed by fax, mail, or direct printing on September 30, 2005 to the parties listed.

---

Brandy Jean Douglas
4120 Cloverport Rd
Tone, TN 38381

Mark A. Fulks
ATTORNEY GENERAL'S OFFICE (NashvilleCr)
P.O. Box 20207
Nashville, TN 37202

Honorable Samuel Mays
US DISTRICT COURT